UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case No. 08-CIV-80876-SEITZ**

**DUANE EUGENE OWEN,**

　　　　Petitioner,

vs.

**WALTER A. MCNEIL,**
Secretary, Florida Department of Corrections,

　　　　Respondent.

_____/

## <u>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS</u>

**THIS CAUSE** came before the Court on Petitioner, Duane Eugene Owen's ("Mr. Owen")

Petition for Writ of Habeas Corpus by a Person in State Custody, filed on August 7, 2008. [D.E. 1].

Mr. Owen is currently on death row at the Union Correctional Institution in Raiford, Florida

following a conviction in 1999 for first degree murder.[1]  The State and Mr. Owen have filed a

response and reply respectively.  In total, Mr. Owen asserts seven claims.

In this habeas corpus proceeding, brought pursuant to 28 U.S.C. §2254, Mr. Owen seeks to

overturn the death sentence imposed on him for his role in the burglary, sexual battery and first

---

[1] Mr. Owen was initially convicted and sentenced to death for this crime in 1984.  *See Owen v. State*, 560 So.2d 207 (Fla. 1990).  However, the Florida Supreme Court reversed the conviction on direct appeal concluding that there had been a violation of Mr. Owen's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  Mr. Owen was subsequently retried in 1999 and was adjudicated guilty and again sentenced to death.  *See Owen v. State*, 862 So.2d 687 (Fla. 2003).  It is this conviction and sentence for which he now seeks habeas corpus relief.

degree murder of Karen Slattery.[2]  Mr. Owen contends that (i) he was denied his right to remain

silent, (ii) he was denied effective assistance of counsel during jury selection,[3] (iii) he was denied

effective assistance of counsel during the penalty phase of his trial, (iv) he was denied effective

assistance of counsel during the guilt phase of his trial, (v) he was denied an evidentiary hearing

during his postconviction proceedings, (vi) he was denied effective assistance of appellate counsel

when counsel failed to raise issues regarding the State's impeachment of defense experts on appeal

and (vii) he was denied effective assistance of appellate counsel for failing to raise obvious errors

made during the penalty phase of his trial.

The Court has considered the written submissions,[4] the entire record of Mr. Owen's state

court proceedings, and applicable law.  For the reasons that follow, the Petition for Writ of Habeas

Corpus is **DENIED**. The Court denies Mr. Owen habeas relief because the Florida Supreme Court

made legal and factual determinations which did not involve an unreasonable application of clearly

established federal law nor an unreasonable determination of the facts in light of the evidence

---

[2] Mr. Owen is also under a sentence of death for the first degree murder of Georgianna Worden. *See Owen v. State*, 596 So.2d 985 (Fla. 1992).  Mr. Owen's petition for writ of habeas corpus filed in the Southern District of Florida as to this conviction and sentence has been denied. *See* 03-81152-CIV-GRAHAM (*denied* September 6, 2007).  On May 18, 2009, the Eleventh Circuit Court of Appeals affirmed the district court's denial of Mr. Owen's petition. *See Owen v. Sec'y Dept. of Corr.*, 568 F.3d 894 (11th Cir. 2009).  Thereafter, the United States Supreme Court denied *certiorari*.  *Owen v. McNeil*, No. 09-6983 (January 19, 2010).

[3] The only claim that the State argues is procedurally barred from federal review is ineffective assistance of counsel based on scrivener's errors during the jury selection transcript. "When a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights.'" *Cone v. Bell*, 129 S.Ct. 1769, 1780 (2009)(internal citations omitted).  All other claims herein were addressed on the merits.

[4] The State does not claim that the Petition is untimely. (*See* [D.E. 12] at 5).  Therefore, the Court considers the Petition timely.

presented. The Court has analyzed Mr. Owens claims and has determined that the Florida Supreme

Court reasonably concluded that Mr. Owen's confession was admissible, that he was rendered

effective assistance of counsel during jury selection and the guilt and penalty phases of his trial, that

he was properly denied an evidentiary hearing on certain of his postconviction claims and that he was

not rendered ineffective assistance of appellate counsel.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background in this section is quoted from the opinion of the

Florida Supreme Court:

> The victim was baby-sitting for a married couple on the evening of March 24, 1984, in Delray Beach. During the evening, she called home several times and spoke with her mother, the last call taking place at approximately 10 p.m. When the couple returned home, just after midnight, the lights and the television were off and the baby-sitter did not meet them at the door as was her practice. The police were summoned and the victim's body was found with multiple stab wounds. There was evidence that the intruder entered by cutting the screen to the bedroom window. He then sexually assaulted the victim. A bloody footprint, presumably left by the murderer, was found at the scene.

> In late May 1984, Owen was apprehended in Boca Raton after he was identified as a burglary suspect. Routine booking disclosed that there were outstanding warrants against him and while being held on these charges, he initiated contact with the police and was interrogated relative to various crimes committed on June 3, 6, 7, and 8. He was also questioned relative to a May 29, 1984, burglary, sexual battery, and murder in Boca Raton. During these interrogations, Owen expressed contempt for lawyers and a desire to help clean up crimes with which he had been charged or suspected. He specifically stated that he did not want a lawyer present but he asked that a certain officer (Woods) from Delray Beach who knew him from previous encounters be present for the interrogation. After confessing to numerous burglaries, sexual batteries, and other lesser crimes, he refused to talk further to the police about the Boca Raton murder and terminated the interrogation. On June 18, he reinitiated contact with the police and renewed his spate of confessions. He also corrected and amplified earlier confessions. On June 21, the Delray Beach police obtained an inked impression of Owen's footprints and the Boca Raton police informed him that, based on fingerprints taken from the crime scene and other evidence, they were charging him with first-degree murder. After the Boca Raton police presented their evidence

to Owen, he confessed to the May 29 burglary, sexual battery, and murder. His account of this crime was remarkably similar to his earlier confessions to three crimes where he removed his clothes, committed a burglary, and either choked or bludgeoned sleeping victims into unconsciousness before committing sexual battery.

Immediately after the above confession to the May 29 Boca Raton murder, the Delray Beach police interrogated Owen relative to the March 24 Delray Beach crime. He first denied any knowledge of this crime, but confessed after the police confronted him with the bloody footprint from the crime scene and the inked impression of his foot taken earlier that day. The details were again remarkably similar to those of the earlier confessions.

*Owen v. State*, 560 So.2d 207, 209-10 (Fla. 1990). The Florida Supreme Court reversed Mr. Owen's

conviction and sentence. In 1999, Mr. Owen was retried and was again found guilty of first degree

murder, attempted sexual battery, and burglary.

Duane Owen was convicted of burglary, sexual battery, and first-degree murder for the 1984 murder of Karen Slattery. The facts of Slattery's murder and Owen's subsequent confession were set out in detail in *Owen v. State*, 560 So.2d 207 (Fla.1990) (*Owen I* ). On direct appeal, this Court reversed Owen's convictions and sentence and remanded for a new trial due to a violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Owen I*, 560 So.2d at 211. After this Court's decision in *Owen I*, the United States Supreme Court issued *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), which held that police are not required to cease questioning if a suspect makes an ambiguous or equivocal request for counsel. In *State v. Owen*, 696 So.2d 715, 720 (Fla.1997) (*Owen II* ), this Court found that the principles announced in *Davis* applied to the admissibility of confessions in Florida and held that the admissibility of Owen's confession in his retrial would be subject to the *Davis* rationale.

*Owen v. State*, 986 So.2d 534, 541 (Fla. 2008). After a separate sentencing hearing, the jury, by a

10-2 vote, recommended that Mr. Owen be sentenced to death. The trial court sentenced Mr.

Owen to death in accordance with this recommendation. At sentencing, the judge found four

aggravating circumstances.[5] In mitigation, the court found three statutory mitigating

---

[5] (1) Owen had been previously convicted of another capital offense or a felony involving the use of violence to some person; (2) the crime was committed while Owen was engaged in the

4

circumstances and sixteen nonstatutory mitigating circumstances.[6]  *Id.* at 541-42.

Mr. Owen appealed his murder conviction and death sentence on direct appeal.  *Id.* at

542.  The Florida Supreme Court found Mr. Owen's claims without merit and affirmed his

conviction and sentence of death.  *See Owen v. State*, 862 So.2d 687 (Fla. 2003).  Subsequently,

Mr. Owen filed a Rule 3.851motion for postconviction relief.  The trial court conducted an

evidentiary hearing and then issued an order denying Mr. Owen relief on all claims, which Mr.

Owen appealed to the Florida Supreme Court.  *Owen*, 986 So.2d at 543.  He raised five claims.[7]

---

commission of or an attempt to commit or flight after committing or attempting to commit the
crime of burglary; (3) the crime was especially heinous, atrocious, or cruel (HAC); and (4) the
crime was committed in a cold, calculated, and premeditated manner without any pretense of
moral or legal justification (CCP).

[6]  The statutory mitigating factors were: (1) the crime was committed while Owen was
under the influence of extreme mental or emotional disturbance; (2) Owen's capacity to conform
his conduct to the requirements of the law was substantially impaired; and (3) Owen's age at the
time of the crime was twenty-three.

The sixteen nonstatutory mitigating factors were: (1) Owen was raised by alcoholic
parents; (2) he was raised in an environment of sexual and physical violence; (3) he was a victim
of physical and sexual violence; (4) he was abandoned by the deaths of his parents and
abandoned by other family members; (5) he has a mental disturbance, and his ability to conform
his conduct to the requirements of law was impaired; (6) he was cooperative in court and not
disruptive during court proceedings; (7) he adjusted well to incarceration and will be a good
prisoner; (8) the offense happened fifteen years ago; (9) Owen will never be released from prison
if given a life sentence; (10) he cooperated with law enforcement officers; (11) he obtained a
high school equivalency diploma; (12) he received a general discharge under honorable
conditions from the United States Army; (13) he saved a life in his youth; (14) he suffered from
organic brain damage; (15) he lived in an abusive orphanage; and (16) other circumstances of the
offense were mitigating, specifically that Owen did not harm the two young children for whom
Karen Slattery was babysitting at the time of her murder.

[7] Mr. Owen's claims on appeal were as follows: (1) he was entitled to a hearing on the
claims designated as requiring factual determination; (2) he proved that he was denied effective
assistance of counsel during the jury selection; (3) he proved that he was denied effective
assistance of counsel during the penalty phase of his trial; (4) he proved that he was denied

5

Mr. Owen also filed a petition for writ of habeas corpus in which he raised three claims.[8] The Florida Supreme Court affirmed the trial court's order denying Mr. Owen's motion for postconviction relief and denied his petition for writ of habeas corpus. *Id.* at 561.

On August 7, 2008, Mr. Owen filed the instant petition pursuant to 28 U.S.C. §2254 for writ of habeas corpus by a person in state custody with the Court. (*See* [D.E. 1]). On February 15, 2010, the State filed its response. (*See* [D.E. 12]). On May 24, 2010, Mr. Owen filed his reply. (*See* [D.E. 17]). This matter is now ripe.

## II. <u>STANDARD OF REVIEW</u>

Mr. Owen's habeas corpus petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214 (1996) (codified at various provisions in Title 28 of the U.S. Code), which significantly changed the standards of review that federal courts apply in habeas corpus proceedings. Under the AEDPA, if a claim was adjudicated on the merits in state court, habeas corpus relief can only be granted if the state court's adjudication results in one of two outcomes. It must have either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was

---

effective assistance of counsel during the guilt phase of his trial; and (5) the cumulative effect of errors through trial violated his constitutional rights. *See Owen*, 986 So.2d at 543.

[8] Mr. Owen's habeas claims were as follows: (1) appellate counsel was ineffective for failing to raise on appeal the State's improper impeachment of a defense expert during the guilt phase of Owen's trial; (2) appellate counsel was ineffective for failing to raise on appeal obvious errors from the penalty phase of Owen's trial; and (3) Owen was illegally sentenced on his noncapital offenses. *See Owen*, 986 So.2d at 543.

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Pursuant to § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an] [opposite] result." *Williams v. Taylor,* 529 U.S. 362, 405 (2000).

With respect to the "unreasonable application" prong of § 2254(d)(1), which applies when a state court identifies the correct legal principle but purportedly applies it incorrectly to the facts before it, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. *See also Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003). Significantly, an "objectively unreasonable application of federal law is different from an incorrect application of federal law." *Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002).

The second prong, § 2254(d)(2), provides an alternative avenue for relief. Habeas relief may be granted if the state court's determination of the facts was unreasonable. "A state court's determination of the facts, however, is entitled to deference" under § 2254(e)(1). *See Maharaj v. Sec'y Dept. of Corr.,* 432 F.3d at 1309. This means that a federal habeas court must presume that findings of fact by a state court are correct; and, a habeas petitioner must rebut that presumption by clear and convincing evidence. *See Hunter v. Sec'y, Dept. of Corr.,* 395 F.3d 1196, 1200 (11th Cir. 2005).

### III. CLAIMS ANALYSIS

In the instant petition, Mr. Owen asserts seven claims for federal habeas relief. First, he

argues that law enforcement obtained involuntary statements which were used against him at trial in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. Second, he argues that he was deprived of his right to effective assistance of counsel during jury selection in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. Third and fourth, he contends that he was denied the effective assistance of counsel in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments during the penalty and guilt phases of his trial respectively. Fifth, he assets that he was denied an evidentiary hearing in state court during his postconviction proceedings in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. Sixth, he claims that he was deprived of his right to effective assistance of appellate counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments during the direct appeal of his conviction and sentence. Finally, Mr. Owen contends that his appellate counsel was ineffective for failing to raise obvious errors during the penalty phase.

## I. ADMISSIBILITY OF CONFESSION

In his first claim for habeas relief, Mr. Owen asserts that his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments were violated when involuntary confessions obtained in violation of his right to remain silent were ruled admissible and used against him at trial. (*See* [D.E. 1]).

### A. No Denial of His Right to Remain Silent

Mr. Owen argues that the Florida Supreme Court's determination that he did not, on two separate occasions, invoke his right to remain silent "was contrary to and an unreasonable application of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Michigan v. Mosley*, 423 U.S. 96

8

(1975)." ([D.E. 1] at 11). This claim has a long history.

On May 29, 1984, Mr. Owen was arrested on unrelated charges by the Boca Raton Police Department. ([D.E. 1] at 7). For three weeks, Mr. Owen was videotaped over the course of six days and encompassing twenty-two hours of interrogation by the police regarding crimes he had alleged to have committed. One of these crimes was the murder of Karen Slattery, the victim in the instant case. It was not until June 21, 1984, that Mr. Owen finally confessed to the Slattery homicide.

On June 21, 1984, Mr. Owen was brought to the police station. The interrogation began at 6:29 p.m. After being read his *Miranda* rights, Mr. Owen was shown a copy of a probable cause affidavit for the murder of Georgiana S. Worden. It revealed that Mr. Owen had left his fingerprint at the scene of the Worden murder. Shortly thereafter, Mr. Owen conceded that the police had "really strong evidence" and he confessed to her murder. The interview concluded.

At 7:39 p.m., Mr. Owen was again interviewed by police but this time he was confronted with evidence regarding the Slattery murder. Earlier that day, Mr. Owen had ink impressions of his footprints taken by the police. During this interview, the police officer showed Mr. Owen that his footprint was "the same footprint" as found at the scene of the Slattery murder. Mr. Owen agreed that it "looks identical to me." ([D.E. 15, Ex. A, Vol. 6] at 1095).

During the interrogation where Mr. Owen was confronted with the evidence against him, the following dialogue occurred between Mr. Owen and Lieutenant Lincoln:

> LINCOLN: This is you. When did you first see her? Now is the time, Duane. We can't have stuff on this thing.
>
> SERGEANT WOODS: It's good enough. I know what you're thinking. You are taking a look at it and you're checking it out and that's it and that's the bottom

line.

LINCOLN: (Inaudible) stuff, right. There's stuff, things I will let you know, Duane. Couple of the pieces of the puzzle don't fit.

How did it come down? Were you looking at this particular house or just going through the neighborhood?

OWEN: **I'd rather not talk about it.**

LINCOLN: You don't have to tell me the details about it, Duane, if you don't feel comfortable with that.

Was it just a random thing or did you have this house picked out, that's what I'm most curious about?

Things happen, Duane, and we can't change them once they are done.

OWEN: (Inaudible).

LINCOLN: But you can make it easier on two parents that need to know.

\* \* \*

LINCOLN: Did you know Mr. and Mrs. Helm, Duane, the people who own the house?

OWEN: No.

LINCOLN: So you had never been there before. You see, that's what I thought. Was I right?

OWEN: No, I had never been there before.

LINCOLN: How long were you outside that night?

OWEN: (Whereupon, there was no response).

LINCOLN: Even better than that, where did you move your bicycle to, I still can't quite figure that out.

\* \* \*

10

LINCOLN: Only four places it could have been, Duane, after you moved it, either behind the house or in front of the house. Now, which was it?

OWEN: (Whereupon, there was no response).

SERGEANT WOODS: Well.

OWEN: How do you know I even got a bike?

LINCOLN: You tell me. You don't have a bicycle? You won't lie, I know you won't lie when you're confronted with the truth.
Now, are you going to tell me you didn't have a bicycle?

OWEN: (Whereupon, there was no response).

LINCOLN: I know a bunch about you. You play by the rules because rules are important. We all need rules.

Now, did you have a bicycle?

Of course, you did.

Now, where did you put it?

OWEN: **I don't want to talk about it.**

LINCOLN: Don't you think it's necessary to talk about it, Duane? Two months (inaudible) you might - -that's a long time. It's a long time for people to wait. It's a long time for you to hold it within yourself. It's a long time for people to wonder.

OWEN: They'd be scared.

SERGEANT WOODS: It's all over. You might as well. You can't get around all of this stuff.

LINCOLN: This isn't going to disappear.

([D.E. 15, Ex. A, Vol. 53] at 5093-94, 5104-5105, 5107, 5108)(emphasis added). [9] The two

---

[9] When Mr. Owen was interrogated by police about the Slattery murder, his first statement, at issue here, came forty-three minutes into the Slattery interview. The second statement was made one hour and ten minutes from the beginning of the interrogation. Shortly

statements quoted above in bold are at the heart of Mr. Owen's claim.

At Mr. Owen's initial trial, his counsel filed a motion to suppress his confession based on his invocation of the right to remain silent. "When presented with the motion to suppress, the trial judge initially indicated that the continuation of the questioning after the responses appeared to be a clear violation of *Miranda*, rendering the statements thereafter inadmissible. However, after reviewing the complete interrogation sessions, the judge concluded that the responses were not an invocation of the right to remain silent." *Owen v. State*, 560 So.2d 207, 211 (Fla. 1990). Mr. Owen's confession was admitted into evidence at trial and he was subsequently convicted of first degree murder. *See id.* On direct appeal, the Florida Supreme Court reversed the conviction and sentence finding a violation of *Miranda*.

> Given this clear rule of law, and even after affording the lower court ruling a presumption of correctness, we cannot uphold the ruling. The responses were, *at the least, an equivocal invocation* of the *Miranda* right to terminate questioning, which could only be clarified. It was error for the police to urge appellant to continue his statement. Such error is not, however, per se reversible but before it can be found to be harmless, the Court must be able to declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. State*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Martin v. Wainwright*. Applying this standard, we are unable to say in this instance that the error was harmless beyond a reasonable doubt. Even though there was corroborating evidence, Owen's statements were the essence of the case against him. We accordingly reverse Owen's convictions on the basis of the inadmissible statements given after the response, "I'd rather not talk about it." FN1
>
> FN1. Statements made before this response do not implicate *Miranda* rights.

*Owen*, 560 So.2d at 211 (emphasis added). Mr. Owen's conviction was reversed and remanded. *Id.* In the years between the reversal of Mr. Owen's conviction and his retrial, the United States

---

thereafter, Mr. Owen went on to confess to the rape and murder of Karen Slattery. The entire Slattery interview lasted approximately three hours. (*See* [D.E. 23]).

Supreme Court issued its decision in *Davis v. United States*, 512 U.S. 452 (1994). The State

moved the trial court to revisit the issue of the admissibility of Mr. Owen's confession. *State v.*

*Owen*, 696 So.2d 715 (Fla. 1997). The trial court denied the State's request and found that Mr.

Owen's confession was still inadmissible at trial. The State petitioned for certiorari relief. The

District Court of Appeal denied the petition but certified the question as one of great public

importance to the Florida Supreme Court. The Florida Supreme Court held that "police in

Florida are not required, under either Federal or Florida Constitution, to ask clarifying questions

if suspect makes only an equivocal or ambiguous request to terminate interrogation after having

validly waived his or her Miranda rights." *Id.* at 719. Specific to Mr. Owen, the Florida Supreme

Court found:

> *Because Owen's responses were equivocal,*FN8 the State would have this Court
> reinstate Owen's convictions on the ground that a retrial is unnecessary in light of
> our decision. We are unwilling to go that far. Our prior decision which reversed
> Owen's convictions and remanded for a new trial is a final decision that is no
> longer subject to rehearing. With respect to this issue, Owen stands in the same
> position as any other defendant who has been charged with murder but who has
> not yet been tried. Just as it would be in the case of any other defendant, the
> admissibility of Owen's confession in his new trial will be subject to the Davis
> rationale that we adopt in this opinion. However, Owen's prior convictions cannot
> be retroactively reinstated.
>
> FN8. We reject Owen's argument that because we termed his comments to be "at
> least equivocal" in our earlier opinion we should now construe his comments as
> unequivocal.

*Id.* at 720 (emphasis added). Upon remand, Mr. Owen once again sought to have his confession

suppressed. The trial court held a suppression hearing[10] and denied Mr. Owen's request. In early

---

[10] "If the state court held a full and fair hearing on the issue raised by the habeas petition,
and the record fairly supports the factual findings of the state court, the federal courts presume
the factual findings to be correct. 28 U.S.C. § 2254(d); *Weeks v. Jones*, 26 F.3d 1030, 1034 (11th

13

1999, he was retried with his confession admitted into evidence. He was convicted and again

sentenced to death. *See Owen v. State*, 862 So.2d 687 (Fla. 2003). On direct appeal, Mr. Owen

argued that his confession should have been suppressed based on the fact that he made an

unequivocal invocation of his right to remain silent which was ignored by the law enforcement

officers during questioning. *See id.* at 693. The Florida Supreme Court denied this claim as

follows:

> Owen next claims that the trial court should have suppressed his confession
> because the law enforcement officers questioning him violated his right to remain
> silent when they failed to terminate the interrogation after Owen replied to certain
> questions with the answers "I don't want to talk about it" and "I'd rather not talk
> about it." FN6 Owen maintains that his responses were unequivocal invocations of
> his right to remain silent, and therefore questioning should have ceased as a result
> of his answers. Because we have, *on numerous occasions, deemed Owen's
> responses to be equivocal*, the trial court properly rejected Owen's motion to
> suppress based upon this claim as well.
>
>> FN6. Owen's ambiguous responses came on June 21, 1984, when he was being
>> questioned by Officers Lincoln and Wood about the Slattery homicide. Owen had not
>> yet confessed at the time he made the statements. Lincoln asked Owen, "There's a
>> few things that I have to know, Duane. A couple pieces don't fit. How did it come
>> down? Were you looking at the particular house or just going through the
>> neighborhood?" Owen's response was, "I'd rather not talk about it." A short time
>> later, following additional questions and answers, Lincoln asked, "Now, did you have
>> a bicycle? Of course you did. Now, where did you put it?" Owen answered, "I don't
>> want to talk about it."
>
> As with the voluntariness issue, the trial judge could have simply relied upon the
> law of the case doctrine when deciding this issue. Instead, the record reflects that
> the judge elected to permit extensive arguments from both parties, and allowed
> the defendant to present any testimony and evidence he wished to support his
> claim that his statements were unequivocal. While the trial judge again properly
> considered the impact of our prior holdings on this issue, it is clear he made his
> own independent determination that Owen's statements were equivocal. This

Cir.1994), cert. denied, 513 U.S. 1193 (1995); *Cave v. Singletary*, 971 F.2d 1513, 1516 (11th
Cir.1992)." *Medina v. Singletary*, 59 F.3d 1095, 1101 (11th Cir. 1995).

determination was proper and fully supported by competent, substantial evidence.

In our original decision concerning the first direct appeal, we reversed Owen's conviction based upon the law enforcement officers' failure to stop questioning Owen after he provided the ambiguous responses. *See Owen*, 560 So.2d at 211. There, we held that the continued questioning violated Owen's *Miranda* right to terminate questioning. *See id.* Notably, however, we determined, "The responses were, at the least, an equivocal invocation...." *Id.* Subsequently, following the United States Supreme Court's decision in *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), FN7 we receded from our 1990 opinion, and in 1997, held that in Florida, law enforcement officers have no duty to terminate questioning, or limit themselves to asking only clarifying questions, when a suspect makes an equivocal invocation of a *Miranda* right. *See Owen*, 696 So.2d at 719. There, we specifically stated that "Owen's responses were equivocal." *Id.* at 720. Further, we rejected Owen's argument that because we had originally referred to his statements as "at the least equivocal" they should be considered unequivocal. *See id.* at 720 n. 8. In addition to those two opinions, in which we characterized Owen's responses as equivocal, we have, in numerous other opinions, made reference to Owen's responses as exemplars of "equivocal utterances." *See, e.g., State v. Glatzmayer*, 789 So.2d 297, 302 (Fla.2001); *Almeida v. State*, 737 So.2d 520, 523 (Fla.1999); *Almeida v. State*, 748 So.2d 922, 930 (Fla.1999); *Owen v. State*, 596 So.2d 985, 987 n. 3 (Fla.1992). Clearly, we have concluded that Owen's statements were equivocal responses in context and under the circumstances presented. Owen did not, during the motion to suppress hearing below, offer any testimony or evidence to contradict our prior determinations. Therefore, under *State v. Owen*, 696 So.2d 715 (Fla.1997), the law enforcement officers questioning Owen had no duty to further clarify his equivocal responses in the context presented or terminate the interrogation. The trial court properly denied Owen's motion to suppress.

> FN7. *Davis* held that neither *Miranda* nor its progeny require police officers to stop interrogation when a suspect in custody, who has made a knowing and voluntary waiver of his or her *Miranda* rights, thereafter makes an equivocal or ambiguous request for counsel. *See* 512 U.S. at 459, 114 S.Ct. 2350.

*Owen*, 862 So.2d at 696-98 (emphasis added).

Mr. Owen is now before the Court arguing that the Florida Supreme Court "clearly applied an unconstitutional standard of review, if the courts applied any standard of review whatsoever." ([D.E. 1] at 16). Mr. Owen also contends that his statements were unequivocal and that the state courts failed to require the government to "shoulder the burden of showing that they

15

[Mr. Owen's statements] were equivocal beyond a reasonable doubt", as held by *Miranda*. (*Id.*). In support of his argument, he cites to cases from district and circuit courts outside of the Eleventh Circuit.[11] (*See* [D.E. 1] at 12-14).

The State responds that "[t]he state court factual determination that under the totality of the circumstances Owen gave equivocal responses to specific immaterial questions posed during his interrogation is entitled to the presumption of correctness and the determination that Owen was not invoking his right to remain silent is neither contrary to an unreasonable application of Miranda v. Arizona, 384 U.S. 436 (1966) and Davis v. United States, 512 U.S. 452 (1994)." ([D.E. 12] at 8). The State attempts to factually distinguish Mr. Owen's circumstances from those of the criminal defendants in the cases cited by Mr. Owen. (*See* [D.E. 12] at 29-32). The State argues that the Florida Supreme Court's finding that Mr. Owen's responses were equivocal was not an unreasonable determination of the facts. (*See* [D.E. 12] at 41).

Mr. Owen replies that it is clear from the totality of the interviews that "it" stood for the Slattery homicide. (*See* [D.E. 17] at 10). Mr. Owen argues that, based on the entire record, his invocation of the right to remain silent was unequivocal. (*See id.*) Mr. Owen also replies that while he did receive a hearing on this issue that it was "not the full and fair hearing that the State claims that Mr. Owen received." (*See id.*). For the reasons that follow, the Court denies Mr. Owen habeas relief because the state court's determination that Mr. Owen's responses were

---

[11] The most persuasive of the cases cited by Mr. Owen is *McGraw v. Holland*, 257 F.3d 513 (6th Cir. 2001). The defendant in *McGraw* repeatedly responded to interrogation questions with the phrase "I don't want to talk about it." *Id.* at 515-16. However, this case is factually different in that, in *McGraw*, it was clear from the direct interrogation questions that the defendant meant that she did not want to talk about the alleged crime or her involvement in the alleged crime. *Id.* at 515. For a variety of reasons that is different from the factual scenario before the Court here.

equivocal was a reasonable decision in light of the evidence presented.

### *Miranda and its Progeny*

In 1966, the United States Supreme Court announced that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney. After the warnings are given, if the suspect indicates that he wishes to remain silent, the interrogation must cease. Similarly, if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Over the last half century, federal jurisprudence has evolved since *Miranda*. Cases subsequent to that landmark decision have sought to clarify the procedural safeguards in place for custodial interrogations.

In *Davis v. United States*, the Supreme Court held that the suspect must unambiguously request counsel. In *Davis*, the suspect remarked to the Naval Investigative Service agent during an interview that "[m]aybe I should talk to a lawyer." *Davis*, 512 U.S. at 455. The interviewed continued, although the agent did ask clarifying questions to which the suspect responded "No, I am not asking for a lawyer" and "No, I don't want a lawyer." *Id.* A short time later, the suspect stated "I think I want a lawyer before I say anything else." *Id.* It was at that point that questioning ceased.

> To recapitulate: We held in *Miranda* that a suspect is entitled to the assistance of counsel during custodial interrogation even though the Constitution does not provide for such assistance. We held in *Edwards* that if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present. But we are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.

*Davis*, 512 U.S. at 462. The holding in *Davis* is also applicable to the right to cut off

17

questioning. *See Coleman v. Singletary*, 30 F.3d 1420 (11th Cir. 1994). The *Davis* holding

formed the basis for the subsequent admission of Mr. Owen's previously suppressed confession.

Today, *Davis* remains controlling. This year, the United States Supreme Court again articulated

the purpose of *Davis*.

> In the context of invoking the *Miranda* right to counsel, the Court in *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), held that a suspect must do so "unambiguously." If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation, *ibid.*, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights, 512 U.S., at 461-462, 114 S.Ct. 2350.
>
> \* \* \*
>
> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that "avoid[s] difficulties of proof and ... provide[s] guidance to officers" on how to proceed in the face of ambiguity. *Davis*, 512 U.S., at 458-459, 114 S.Ct. 2350. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression "if they guess wrong." *Id.*, at 461, 114 S.Ct. 2350. Suppression of a voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity. *See id.*, at 459-461, 114 S.Ct. 2350; *Moran v. Burbine*, 475 U.S. 412, 427, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Treating an ambiguous or equivocal act, omission, or statement as an invocation of *Miranda* rights "might add marginally to *Miranda's* goal of dispelling the compulsion inherent in custodial interrogation." *Burbine*, 475 U.S., at 425, 106 S.Ct. 1135. But "as *Miranda* holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process." *Id.*, at 427, 106 S.Ct. 1135; *see Davis, supra*, at 460, 114 S.Ct. 2350.

*Berghuis v. Thompkins*, 130 S.Ct. 2250, 2259-60 (2010).  Here, the question before the Court is

whether or not Mr. Owen's statements to police were an unequivocal invocation of his right to

remain silent. The state courts found, for better or for worse, that Mr. Owen's attempted invocation of his right to remain silent was equivocal. *See State v. Owen*, 696 So.2d 715 (Fla. 1997); *see also Owen*, 862 So.2d at 696-98. State court factual findings must be "presumed to be correct," and the habeas petitioner "must rebut[ ] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Dretke*, 545 U.S. 231 (2005). Because in federal habeas proceedings under AEDPA great deference is given to state-court factual and legal determinations, under the facts presented here, the Court cannot say that the state courts' determinations were unreasonable.

To reverse under the AEDPA, the Court would have to find the state-court conclusion to be "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Mr. Owen's statements are open to more than one interpretation and, even if the state court's interpretation was not the most probable, that does not mean that the state court's determination of the facts was unreasonable. Perhaps if this matter was not before the Court on 28 U.S.C. §2254 habeas review, there might be a different result.[12]

---

[12] This is not to say that absent the deference required to be given to the state court's determination under the AEDPA that the outcome of Mr. Owen's claim would be different. Even if the Court found Mr. Owen's responses unequivocal and that the Florida Supreme Court's determination was unreasonable, his claim would still be subjected to a harmless error review.

> The admission of statements obtained in violation of *Miranda* is subject to harmless error scrutiny. "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). "This determination requires a two-fold inquiry into (1) the effect of the erroneously admitted statement upon the other evidence introduced at trial, and (2) upon the conduct of the defense." *Beale,* 921 F.2d at 1435 (*citing Harryman v. Estelle*, 616 F.2d 870, 875 (5th Cir.1980) (en banc)).

*Hart v. Attorney Gen. of the State of Florida*, 323 F.3d 884, 895 (11th Cir. 2003). While Mr.

However, having carefully reviewed the entire record and the legal and factual determinations made by the Florida Supreme Court, the Court does not find them to be an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2).

### Mr. Owen's Statements

*"I'd rather not talk about it."* Mr. Owen made this statement in response to a question about how he chose the Helm's home (the location of the Slattery murder - Karen Slattery was babysitting for the Helms on the night of the murder). (*See* [D.E. 15, Ex. A, Vol. 53] at 5093-94)(emphasis added). At that point, police investigators continued to question him. Later, in response to questioning regarding the location of the bicycle Mr. Owen used to transport himself to the scene of the Slattery murder, Mr. Owen stated *"I don't want to talk about it."* (*See* [D.E. 15, Ex. A, Vol. 53] at 5108)(emphasis added). The investigator then continued to question Mr. Owen, who later confessed. (*See* [D.E. 15, Ex. A, Vol. 53]).

Although, the Florida Supreme Court's analysis regarding its ultimate conclusion that Mr. Owen's statements were equivocal is less than crystal clear, it appears that the court considered the interrogation as a whole, including Mr. Owen's conduct prior to his statements which he argues invoked his right to remain silent.[13] This is the appropriate standard.

_____

Owen's initial conviction was premised almost entirely on his confession, his second trial admitted DNA evidence against him with a certainty of 690 million to one. (*See* [D.E. 15, Ex. A, Vol. 53] at 4996).

[13] The three Florida Supreme Court's opinions regarding Mr. Owen's responses to police during the Slattery interrogation have all characterized those responses as "equivocal." *See Owen*, 560 So.2d at 211 (finding Owen's responses as "at the least equivocal"); *see also Owen*, 696 So.2d 719 ("Owen's responses were equivocal"); *see also Owen*, 862 So.2d at 697 ("we have, on numerous occasions, deemed Owen's responses to be equivocal"). The court did not

The Supreme Court has suggested, however, that "an accused's request ... may be characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself." *Id.* The inquiry as to whether a suspect's invocation of his right to remain silent was ambiguous or equivocal is an objective one. *Davis*, 512 U.S. at ----, 114 S.Ct. at 2355. "A suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent." *Coleman v. Singletary*, 30 F.3d 1420, 1424 (11th Cir.1994), *cert. denied*, 514 U.S. 1086, 115 S.Ct. 1801, 131 L.Ed.2d 727 (1995). *See also Davis*, 512 U.S. at ----, 114 S.Ct. at 2355. Thus, "[t]he determination of whether a suspect's right to cut off questioning was scrupulously honored requires a case-by-case analysis." *Christopher v. Florida*, 824 F.2d 836, 840 (11th Cir.1987).

*Medina v. Singletary*, 59 F.3d 1095, 1101 (11th Cir. 1995). In the instant case, Mr. Owen was interrogated by the police over several weeks. *See Owen*, 560 So.2d at 207. A review of the video interrogation indicates that on June 21, 1984, (the day of the confession to the Slattery murder) Mr. Owen waived his *Miranda* rights and was actively engaged prior to the statements at issue here. (*See* [D.E. 15, Ex. A, Vol. 53] at 5090-93; *see also* [D.E. 23]). In *State v. Glatzmayer*, the Florida Supreme Court found Mr. Owen's statements to be "unclear whether Owen was referring to the immediate topic of discussion, i.e., the house and the bicycle, or to the underlying right to cut off questioning." 789 So.2d at 302, n.8. As such, the court determined that his statements were "equivocal utterances." *Id; see also Almeida v. State*, 737 So.2d 520, 523 (Fla. 1999). The Court is aware that Mr. Owen's responses could be interpreted in more than one way. While the Court may not have interpreted them as the Florida Supreme Court did, in order to reverse and issue the writ, the Court would have to find that the state court's factual

---

articulate how they reached that ultimate factual determination; rather they point the reader to other opinions in which they had referred to Mr. Owen's responses as "equivocal utterances." *See, e.g., State v. Glatzmayer*, 789 So.2d 297, 302 (Fla. 2001); *Almeida v. State,* 737 So.2d 520, 523 (Fla.1999); *Almeida v. State*, 748 So.2d 922, 930 (Fla.1999); *Owen v. State*, 596 So.2d 985, 987 n. 3 (Fla.1992).

findings were unreasonable, *and* that the petitioner rebutted them with clear and convincing evidence. *See Miller-El v. Dretke*, 545 U.S. 231 (2005). Here, the Court does not. Given the record before it, the Court can understand and finds reasonable that the Florida Supreme Court concluded that Mr. Owen's responses were equivocal. Thus, habeas relief is denied.

### B. No Involuntary Statements Made as a Result of Threat or Promise

In addition to Mr. Owen's claim that his statements were obtained in violation of his right to remain silent, he also argues that his statements were not voluntarily given. (*See* [D.E. 1] at 18). Mr. Owen contends that the police attempted to influence him with "promises, implied and direct" including, among other things, that he would receive "mental health help in exchange for his confession". ([D.E. 1] at 16-17). As a result, Mr. Owen asserts that "the confessions obtained as a result of those promises should have been suppressed." Specifically, Mr. Owen argues that the police promised to get him some mental health assistance, bring his brother to jail to see him, and to intervene with the State Attorney on his behalf, all in order to coerce him into confessing. (*See* [D.E. 1] at 17).

Mr. Owen first made this argument on direct appeal to the Florida Supreme Court of his initial conviction. It was denied because the court found that the videotapes of the interrogation sessions clearly show that those sessions were initiated by Mr. Owen, that he was advised of his *Miranda* rights and that they "were not individually lengthy and that Owen was given refreshments, food and breaks during the sessions." *Owen*, 560 So.2d at 210. Ultimately, the court found that the confession "was entirely voluntary under the fifth amendment and that no improper coercion was employed." *Id.*

However, Mr. Owen's conviction was reversed on different grounds. Thereafter, Mr.

22

Owen was retried and again convicted. On direct appeal, he raised this claim for the second time. The Florida Supreme Court again denied Mr. Owen relief finding that initially "the law of the case doctrine is controlling here." *Owen*, 862 So.2d at 694. The court also determined that "even if the law of the case doctrine had no application here, Owen's confession would still be admissible as voluntary," noting that at a later hearing on the motion to suppress, the trial judge "conducted an extensive *de novo* hearing." *Id.* The court allowed Owen the opportunity to present any evidence he wished to support his claim and completely reevaluated all of the evidence prior to reaching his decision including personally reviewing the twenty plus hours of videotaped interrogations. Ultimately, the trial court found that "the statements by the defendant were, in fact, voluntarily given after proper procedurally [sic] *Miranda* rights were given." *Id.* The Florida Supreme Court agreed and held that the trial court did not err because Mr. Owen's own testimony "supports the conclusion that the officers did not employ improper methods to obtain a statement from him" and "a thorough reading of the transcript reveals no instances of threats or improper coercion by the officers." *Id.*

Mr. Owen raises the same argument here. The State responds that "it is clear that Owen received his <u>Miranda</u> warnings [,] admitted he understood them and that officers could make no deals, and that he wanted to talk to the police." ([D.E. 12] at 41). The State argues that the Florida Supreme Court did not make an unreasonable application of *Miranda* given Mr. Owen's testimony at the suppression hearing. (*Id.*)

Mr. Owen replies that while law enforcement "tried to minimize the implied and direct promises made to Mr. Owen, the only reasonable reading of the record was that law enforcement coerced the mentally ill Mr. Owen into making statements that he did not voluntarily make."

([D.E. 17] at 16).

The Court has reviewed the video tapes of the interrogations and the transcripts of the

evidentiary hearing on the motion to suppress. (*See* [D.E. 15, Ex. A., Vol. 28-32]).  The Court

finds that the Florida Supreme Court's determination that Mr. Owen's confession was the

product of a knowing and voluntary waiver was reasonable. The Court has reached that

conclusion based on the following standard:

> "On review of a habeas [corpus] petition, we make an independent assessment of
> the voluntariness of the [petitioner's] confession." *Waldrop v. Jones*, 77 F.3d
> 1308, 1316 (11th Cir. 1996) (*citing Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct.
> 445, 88 L.Ed.2d 405 (1985)), *cert. denied*, 519 U.S. 898, 117 S.Ct. 247, 136
> L.Ed.2d 175 (1996); *see also McCoy*, 953 F.2d at 1263. In so doing, we presume
> the state court's subsidiary and historical findings of fact to be correct pursuant to
> § 2254(d). *See Waldrop*, 77 F.3d at 1316; *McCoy*, 953 F.2d at 1263 (stating that
> subsidiary findings, such as the circumstances of the defendant's interrogation and
> the actions of law enforcement officers, "are entitled to a presumption of
> correctness if fairly supported by the record[ ]"); *Harris v. Dugger*, 874 F.2d 756,
> 762 (11th Cir.) ("As the Court stated in *Miller*, '... subsidiary factual questions,
> such as ... whether in fact the police engaged in the intimidation tactics alleged by
> the defendant ... are entitled to the § 2254(d) presumption.' ") (quoting *Miller*, 474
> U.S. at 112, 106 S.Ct. 445), *cert. denied*, 493 U.S. 1011, 110 S.Ct. 573, 107
> L.Ed.2d 568 (1989). In addition, "[w]hen a state court fails to make explicit
> findings, a state court's denial of the claim 'resolves all conflicts in testimony
> bearing on that claim against the criminal defendant.' " *Waldrop*, 77 F.3d at 1316
> (quoting *Culombe v. Connecticut*, 367 U.S. 568, 604-05, 81 S.Ct. 1860, 6 L.Ed.2d
> 1037 (1961)). This court must assess [Owen's] claim under the totality of the
> circumstances surrounding the statements. *Waldrop*, 77 F.3d at 1316; *Harris*, 874
> F.2d at 761 ("A confession is voluntary if, under the totality of the circumstances,
> it is the product of the defendant's free and rational choice.").

*Baldwin v. Johnson*, 152 F.3d 1304, 1320 (11th Cir. 1998).  Perhaps the best evidence that Mr.

Owen's confession was voluntary and the product of a "free and rational choice" is Mr. Owen's

own testimony.  At the evidentiary hearing on the motion to suppress, Mr. Owen testified. (*See*

[D.E. 15, Ex. A, Vol. 31] at 1107-1172).  He testified unequivocally that he was read his

*Miranda* rights maybe fifteen to twenty times during the course of his interrogations, that he did

not indicate to the police that he did not understand those rights and that he did not invoke his

right to remain silent (at the time of the reading of his rights) or his right to counsel. (*See* [D.E.

15, Ex. A, Vol. 31] at 1152-1153). In fact, Mr. Owen responded "Absolutely" when asked

"[a]nd you wanted to talk to the detectives and that's why you never invoked your right to remain

silent or for an attorney, isn't that true?" (*Id.* at 1154). Mr. Owen clearly testified that he spoke

to the detectives by choice and that no one made him talk to them. (*See* [D.E. 15, Ex. A, Vol. 13]

at 1154). He also testified that in 1984 (when he was interrogated for the Slattery murder) the

detectives had not made him any promises regarding getting Mr. Owen mental health services.

(*Id.* at 1155). He also stated that he was aware that "deals" would come from the State

Attorney's Office and not the detectives who were interrogating him.[14] (*Id.*)

The Court has reviewed the Supreme Court precedent and finds that the Florida Supreme

Court's determination was not " contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States" or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d).

> [I]t is clearly established from holdings of the Supreme Court that the inquiry into
> whether a waiver was voluntary, knowing, and intelligent is twofold:
>
> First, the relinquishment of the right must have been voluntary in the sense that it
> was the product of a free and deliberate choice rather than intimidation, coercion,
> or deception. Second, the waiver must have been made with a full awareness of
> both the nature of the right being abandoned and the consequences of the decision
> to abandon it. Only if the "totality of the circumstances surrounding the

---

[14] Mr. Owen did testify that he believed that the detectives would speak to the State's
Attorney on his behalf operating essentially as a go-between. (*Id.)*

interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (*quoting Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)).

*Hart*, 323 F.3d at 892. Applying this standard to the record evidence, Mr. Owen freely and voluntarily chose to waive his right to remain silent. Habeas corpus relief on this ground must be denied.

## II. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS

In his second, third and fourth claims, Mr. Owen asserts that he was denied effective assistance of counsel in deprivation of his Sixth Amendment rights. (*See* [D.E. 1] at 19-34). He argues that his counsel was ineffective during jury selection and both the guilt and penalty phases of his trial. (*Id.*).

The United States Supreme Court set forth the two-prong test that a convicted defendant must meet to demonstrate that his or her counsel rendered ineffective assistance. *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms." *Strickland*, 466 U.S. at 688. "The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is whether some reasonable attorney could have acted in the circumstances . . . [as this attorney did]-whether what . . . [this attorney] did was within the 'wide range of reasonable professional assistance.'" *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc) (quoting *Strickland*, 466 U.S. at 689) (citation omitted).

26

Second, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

The trial court conducted a limited evidentiary hearing on four of Mr. Owen's claims for postconviction relief. Mr. Owen was allowed to present evidence that his trial counsel was ineffective: (1) during jury selection; (2) for failing to present drug and alcohol abuse in support of insanity defense; (3) during the penalty phase; and (4) because he was denied the right to testify due to counsel's failure to discuss Mr. Owen's rights.[15] (*See* [D.E. 15, Ex. C, Vol. 3] at 315-86; [D.E. 15, Ex. C.,Vol. 4] at 685). Mr. Owen's remaining postconviction claims were denied without hearing.

At trial, Mr. Owen was represented by Carey Haughwout. She testified at the evidentiary hearing on Mr. Owen's postconviction claims. The Court has reviewed the testimony. For those claims in which counsel was not questioned or where counsel had no recollection, the Court applies a presumption that counsel's actions were reasonable. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of counsel's competency. Therefore, where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Williams v. Allen*, 598 F.3d 778, 794 (11th Cir. 2010)(citations omitted).

---

[15] Mr. Owen did not assert this fourth claim in the instant petition for writ of habeas corpus. Therefore, the Court makes no comment on the merits or lack thereof of this argument.

## A. Jury Selection[16]

Mr. Owen argues that his trial counsel "failed to act reasonably and effectively throughout jury selection" and therefore he "was denied the most fundamental of rights guaranteed by the American system of justice - a fair and impartial jury." ([D.E. 1] at 19, 20). Mr. Owen argues three specific deficiencies on the part of his counsel during jury selection. First, he contends that counsel was ineffective when counsel failed to use a peremptory challenge to strike a juror who had been the victim of a similar crime not more than two years prior. (*Id.* at 21). Second, Mr. Owen argues that his counsel was ineffective for failing to seek the removal of jurors who were predisposed to impose the death penalty. (*Id.* at 29-31). Finally, Mr. Owen argues that his counsel was ineffective for failing to object to certain improper statements made by the State and the court. (*Id.* at 26-27). These later claims are hybrids of ineffective assistance of counsel mixed with trial error. Mr. Owen's first two sub-claims involved direct and specific claims wherein counsel failed to strike certain jurors. The remaining sub-claims are loosely couched as ineffective assistance of counsel claims but are truly claims of trial court error and prosecutorial misconduct. For clarity's sake, the Court has re-organized all the sub-claims in a logical fashion for an analysis on the merits.

The record reflects that jury selection took approximately two weeks. The venire was required to complete a lengthy and detailed questionnaire. During jury selection, Mr. Owen was privy to bench conferences and was asked directly by the court if he had an opportunity to confer with counsel before he accepted the jury panel. He responded in the affirmative. (*See* [D.E. 15,

---

[16] As to the majority of these claims, Ms. Haughwout testified that she had no specific recollection or independent memory of jury selection. (*See* [D.E. 15, Ex. C, Vol. 5] at 110-116).

Ex. A, Vol. 50] at 4452).  He now argues that his counsel was ineffective during the jury selection process.

### i. Juror Sharon Knowles

In his first sub-claim, Mr. Owen asserts that his counsel was ineffective for failing to use a peremptory challenge as to Juror Sharon Knowles.  Ms. Knowles had recently been the victim of a horrifying crime in which an armed and masked man entered her home, raped her daughter at gun point while her five year old grandson cried and screamed and then the gunman attempted to kidnap her daughter. (*See* [D.E. 1] at 22).  Mr Owen argues that his counsel was ineffective for failing to exercise a peremptory challenge and strike Ms. Knowles from the venire.  The State responds that the Florida Supreme Court made reasonable findings based on the record, identified the proper law and made a reasonable application to the facts, therefore, this Court should deny Mr. Owen habeas relief.  (*See* [D.E. 12] at 53,56).  Mr. Owen replies that "no reasonable defense attorney who would allow a juror who had recently had the experiences that Ms. Knowles suffered to sit on the jury to decide between Mr. Owen's guilt and innocence, his sanity and insanity and his life and death." ([D.E. 17] at 18).  Mr. Owen also replies that under *Strickland*, "the prejudice prong does not even require a showing 'that counsel's deficient conduct more likely than not altered the outcome in the case.'"  ([D.E. 17] at 22).

Mr. Owen first argued this claim on his Rule 3.851 postconviction motion.  The circuit court denied the claim and the Florida Supreme Court affirmed because Ms. Knowles advised the court and counsel during the voir dire that she was able to "'lay aside any bias or prejudice and render [her] verdict solely upon the evidence presented and the instructions on the law given to [her] by the court.' *Lusk*, 446 So.2d at 1041." *Owen v. State*, 986 So.2d 534, 550 (Fla. 2008).

29

Further, the court found that "[b]ased upon the totality of Knowles' responses in her voir dire, Owen has not shown her to be actually biased." *Id.*

As an initial matter, the United States Supreme Court has "'long recognized' that 'peremptory challenges are not of federal constitutional dimension.'" *Rivera v. Illinois*, 129 S.Ct. 1446 (2009) (quoting *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000)). "States may withhold peremptory challenges 'altogether without impairing the constitutional guarantee of an impartial jury and a fair trial.'" *Id.* at 1450 (quoting *Georgia v. McCollum*, 505 U.S. 42, 57 (1992)). Here, it is undisputed that Ms. Knowles was the victim of a horrific crime in the years just prior to the trial of Mr. Owen. It is also not in dispute that Ms. Knowles informed counsel and the court that she could put aside her feelings and make an unbiased judgment of the facts. The dispute here is whether or not Mr. Owen's counsel had a duty to remove her from the jury panel using a peremptory challenge because, despite her assurances to the court about her ability to remain impartial and follow the law, it would be virtually impossible for someone who had experienced what she had experienced to do so. (*See* [D.E. 17] at 18). If that is true, then, Mr. Owen surmises that his counsel was ineffective because no reasonable lawyer would have allowed her to remain on the jury. (*See id.*)

"[T]he Supreme Court has not concluded that a lawyer who leaves an arguably biased juror on a jury is *per se* ineffective." *Babb v. Crosby*, 197 Fed. Appx. 885, 887 (11th Cir. 2006). Accordingly, in order to prevail on this claim, Mr. Owen would have to satisfy both the deficiency and prejudice prongs of *Strickland*. Applying this test, Mr. Owen's claim fails. Even if the Court were to accept as true Mr. Owen's argument that his counsel's performance was

30

deficient[17] by the very fact that she allowed Ms. Knowles to remain on the jury, he still must show prejudice. In his reply, Mr. Owen challenges the standard that the Florida Supreme Court applied regarding prejudice. ([D.E. 17] at 22). He argues that "the prejudice prong does not even require a showing that counsel's deficient conduct more likely than not altered the outcome in the case." (*Id.*).

To be clear, prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding [i.e., the sentencing hearing] would have been different [i.e., resulted in something other than a sentence of death]." *Rompilla v. Beard,* 545 U.S. 374, 390 (2005). This is the appropriate standard. Under this standard, however, Mr. Owen's claim does fail. Indeed, he has failed to even articulate how the result of the proceeding would have been different has Ms. Knowles not served on his jury let alone show a reasonable probability. Mr. Owen only vaguely scratches the surface by insinuating that because "Ms. Knowles very likely shared the events that happened to her and her daughter with other jurors" and given the fact that she wished someone had "caught and killed" her daughter's perpetrator the other jurors would have been "more likely to vote for guilt and recommend death." ([D.E. 1] at 23-24). This is highly speculative at best. Mr. Owen committed a heinous crime against a fourteen year old girl. *See Owen*, 986 So.2d at 541. The jury voted by a ten-to-two margin that he should receive the death penalty. The Court does not find a reasonable probability that had

---

[17] This is not to say that the Court finds the Florida Supreme Court's determination unreasonable. Based on Ms. Knowles' emphatic statements to the court, it is not unreasonable to find that she would keep an open mind and follow the law. The Court does find it perplexing that counsel for Mr. Owen did not find it ill-advised to allow Ms. Knowles to remain on the jury given her prior experiences but that does not automatically make her biased. Given the record and the deference that the Court must give the decisions of the state courts under the AEDPA, the Court is unable to conclude that the state court's determination of this issue was unreasonable.

counsel exercised a peremptory challenge and had removed Ms. Knowles from the panel, it would have resulted in a different sentence.

### ii. Automatic Imposition of Death Sentence

In his second sub-claim, Mr. Owen argues that his counsel was ineffective for failing to strike jurors who "might automatically recommend death." ([D.E. 1] at 28). He asserts that Jurors Betty Griffin and Betty Matousek both made statements during the voir dire which clearly indicated that they believed the death penalty should be "automatically imposed" for certain specific crimes. (*See* [D.E. 1] at 28, 29). Therefore, it is averred that Mr. Owen's counsel was ineffective for failing to have those jurors stricken. (*See* [D.E. 1] at 28). The State responds that "both jurors agreed they could set aside their views and follow the law" and that is the proper standard for determining when a prospective juror may be excluded. (*See* [D.E. 12] at 60). Mr. Owen replies that contrary to the State's "footnote summary of Ms. Matousek's comment, the actual transcript shows that Ms. Matousek was in favor of the automatic imposition of the death penalty." ([D.E. 17] at 26).

Mr. Owen first argued this claim on his Rule 3.851 postconviction motion. The circuit court denied the claim and the Florida Supreme Court affirmed finding Mr. Owen's argument "without merit." *Owen v. State*, 986 So.2d 534, 550 (Fla. 2008). Specifically, the court found that "Juror Matousek never equivocated as to whether she could follow the law" and while Juror Griffin was less unequivocal, Mr. Owen had failed to "demonstrate that Juror Griffin was actually biased." *Id.* As Mr. Owen did nothing more but to show "merely that there was a doubt about her impartiality," his claim failed. *Id.*

The Court has reviewed the record and finds the Florida Supreme Court's determination

that ultimately both jurors agreed to set aside their personal beliefs and follow the instructions of

the trial court was a reasonable interpretation of the facts. (*See* [D.E.15,  Ex. A, Vols. 35, 38] at

1844-45, 2500-2505).  Juror Griffin explicitly stated she understood the law and could follow it.

(*See* [D.E. 15, Ex. A, Vol. 35] at 1844-45). The prosecution specifically asked Juror Griffin

during the voir dire if she understood that "because the defendant has been found guilty of first

degree murder does not automatically mean that there should be a death penalty" to which she

replied "Yes." (*Id.* at 1849).  Juror Matousek clearly stated that should was able to follow the

instructions on the law including the weighing process prior to making a sentencing

recommendation. (*See* [D.E. 15] Ex. A. Vol. 38] at 2500).  The court repeatedly asked Juror

Matousek if she understood and could follow the "instructions on the law in that regard if we

reach the stage of the case and participate in that weighing process and make a recommendation

accordingly?" Over and over, Juror Matousek responded that she could.  (*Id.* at 2498-2500).

     Based on their answers, it is unlikely that the trial court would have granted a request to

remove these to jurors for cause had one been made. *See generally Depree v. Thomas*, 946 F.2d

784 (11th Cir. 1991).  Counsel is not ineffective for failing to make a non-meritorious argument.

*See Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989).  Habeas relief is denied.

### *iii. Instructions on Mitigation*

     In his third sub-claim, Mr. Owen asserts that his counsel was ineffective for failing to

object when the State and the court repeatedly misstated "the law on mitigation in a manner that

misled the jurors into believing that they could only consider statutory mitigating factors." ([D.E.

1] at 26).  During the voir dire, the court informed the jurors that the "aggravating and mitigating

factors will be spelled out for you" but then later denied a defense motion which would have had